IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| GREGORY STILLMAN, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 4:19-0222-DGK |
| WAL-MART STORES EAST I, LP, | ) ) ) | |
| Defendant. | ) | |

## ORDER DENYING PLAINTIFF'S MOTION TO EXCLUDE MEDICAL RECORDS FROM ATLANTA COMPREHENSIVE NEUROPSYCHOLOGY

Now before the Court is Plaintiff's Motion to Exclude Medical Records From Atlanta Comprehensive Neuropsychology (Doc. 108). The motion is denied for the following reasons.

On April 28, 2020, Plaintiff contacted and participated in a phone conference with KC Neurology in Kansas City, speaking with Nurse Practitioner Adriana Spruell.

Subsequently, on May 12, 2020, Plaintiff sought treatment from Dr. Julian Bragg at Midtown Neurology in Atlanta, Georgia. Dr. Bragg, like Plaintiff's expert neurologist and Defendant's expert neurologist, recommended Plaintiff undergo neuropsychological testing to guide his continued care. Plaintiff subsequently underwent formal neuropsychological testing with Dr. Jason King at Atlanta Comprehensive Neuropsychology on June 3, 2020.

On June 25, Plaintiff disclosed his treatment with Dr. Bragg and Dr. King. In the email containing the supplemental disclosures, Plaintiff's counsel wrote, "Plaintiff continues to seek medical treatment for his injuries and has recently seen two new providers in Atlanta, where he lives," leading Defense counsel to believe that Plaintiff would seek to introduce evidence of these visits as evidence of Plaintiff's ongoing problems. That same day, defense counsel requested records from both Atlanta providers.

A month later, on July 29, Defense counsel received the records from Atlanta Comprehensive Neuropsychology, including Dr. King's neuropsychological evaluation. In the "Presenting Symptoms" section of his report, Dr. King writes,

> Regarding his head injury from March 2018, it appears that he [Plaintiff] may have experienced mild uncomplicated traumatic brain injury (a.k.a. concussion) with no loss of consciousness, posttraumatic amnesia, or neuroimaging abnormalities. Brain injuries of this type have a good prognosis with respect to cognitive functioning, typically with any associated measurable cognitive deficits resolving within several days to weeks. *Cognitive deficits at this point more than two years post-injury are more likely attributable to other cause(s).*

Ex. to Mot. at 2 (Doc. 108-1) (emphasis added). The next day, July 30, 2020, Defendant requested an agreement from Plaintiff to add the Atlanta Comprehensive Neuropsychology records to the parties' Joint Stipulation as to the Admissibility of Evidence. Plaintiff responded Wednesday, August 5, 2020, declining to so stipulate.

Instead, after the parties consulted the Court about a possible phone conference, Plaintiff filed the pending motion. Plaintiff argues the medical records are hearsay because they contain "indications of lack of trustworthiness" resulting from a lack of expert qualifications or lack of factual support for Dr. King's statements. Plaintiff notes Dr. King wrote he conducted a "review of available background records," but the records he reviewed included only office visit notes from the May 12 visit with Plaintiff's new treating neurologist in Atlanta. Alternately, the records should be excluded under FRE 403 because they contain "untested non-retained expert opinions;" that is, Plaintiff has not had an opportunity to cross-examine Dr. King, so the jury may be misled or confused about his opinion or qualifications.

Defendant responds that Dr. King's statement is admissible under FRE 803(4) as a hearsay exception (statement made for purposes of medical diagnosis and treatment), in conjunction with

FRE 803(6) as another hearsay exception (records of regularly conducted activity, including "diagnoses"). *Cothran v Russell*, No. 2:17-cv-04012-NKL, 2019 WL 5400976, at *1 n.1 (W.D. Mo Oct. 10, 2019) (noting the medical report was hearsay and the nurse's statements in the report were a second layer of hearsay, but the report was admissible under FRE 803(4) and the nurse's statements in the report were admissible under 803(6)). Defendant states it intends to introduce Dr. King's evaluation in the same manner as all of Plaintiff's other treating providers' records: as evidence of Plaintiff's treatment and the treating providers' opinions expressed for the purposes of treatment.

Defendant argues Plaintiff wants to use his recent medical records, including Dr. King's evaluation, as both a sword and a shield. Plaintiff wants to use the records as a sword to corroborate his testimony that he is still hurt and still seeking treatment. But he also wants to use the records as a shield, preventing the jury from learning that Dr. King's findings are quite similar to those made by Defendant's expert neuropsychologist.

The Court rules as follows.

Plaintiff's hearsay argument is without merit. The fact that Dr. King truthfully wrote he reviewed the available background records, which happened to be only notes from Plaintiff's May 12 visit with his new treating neurologist in Atlanta, does not give rise to an inference that Dr. King's statements are untrustworthy. Plaintiff can introduce evidence about what the available background records were. Plaintiff's argument concerning how many medical records Dr. King reviewed or the strength of his medical credentials goes to the weight his statements should be given, not their admissibility. Dr. King's evaluation is admissible under 803(4) and 804(6).

Plaintiff's claim that the records should be excluded under 403(b) is likewise unavailing. Just because a declarant for an otherwise admissible piece of evidence is not now available for

3

deposition does not mean the evidence is somehow misleading or confusing. There is nothing confusing or misleading about Dr. King's diagnosis: He believes Plaintiff's cognitive deficits at this point "are more likely attributable to other cause(s)." While his diagnosis may be wrong, it is not confusing or misleading.

Plaintiff's argument is really more a misplaced plea for equity, that it would somehow be unfair for the Court to admit evidence that was created two months before trial. But this is a problem of Plaintiff's own making. Dr. King is Plaintiff's chosen neuropsychologist; Plaintiff chose to be evaluated by him. When Plaintiff went to see Dr. King, Plaintiff (and his attorneys) knew or should have known that Dr. King would create a report, that his report would have to be turned over to defense counsel, and that his report would almost certainly be admissible. Defense counsel only learned about Dr. King's consultation on June 25, at which point they immediately— that same day—requested his report. They did not receive it until July 29, less than two weeks before trial. The fact that Plaintiff now has little to no time to depose Dr. King to limit the potential damage of his diagnosis is not Defendant's fault.

Accordingly, the motion is DENIED. The medical records from Atlanta Comprehensive Neuropsychology are admissible.

**IT IS SO ORDERED.**

Date:  August 10, 2020                                  /s/ Greg Kays
                                                                                 GREG KAYS, JUDGE
                                                                                 UNITED STATES DISTRICT COURT